With the presiding judge's permission, I would like to make a statement this morning. And that is, as a judge in senior status in the last number of years, it has been my pleasure to sit with a variety of my colleagues, many of whom have joined the court, obviously, after I did. And this morning we have a particularly notable occasion, which is that Judge Kathleen O'Malley is presiding for the first time in her judicial career. And I am delighted to serve with her on this panel. Thank you, Judge. And I'm happy to do it with this panel. If her husband was here, George, are you here by any chance? George, do you have your cell phone with you? I do, Your Honor, but it's in the off position. If you turn it on, you can come up and take a picture. But you've got to turn it off afterwards. Is that true? Oh, please. We wouldn't want this occasion to go unnoticed, George, in your family history. May I? He's not very good at that. George, you need help? You know, these lawyers, they really have problems. It's just something. I can't seem to disappear. Okay. There we go. Fingers in the way. Got it. Thank you. Thank God for law clerks. As presiding judge, it's all yours. All right. Thank you all. All right. We're going to call the first case. It's Osram Slovenia, Inc. v. American Induction Technologies, Inc. Mr. LoCascio, are you ready? You want to save three minutes for rebuttal. Is that right? Yes. Okay. May it please the Court. The fundamental issue on appeal here is that the district court ignored disputed issues of fact in order to grant a summary judgment of invalidity. The district court ignored limitations and failures of the prior article. The district court ignored KSR and this Court's post-KSR treatment, specifically with respect to objective considerations of non-obviousness. And the district court ignored the specification of the 905 Padlet bill. These failures affect obviousness, but they also affect anticipation as well. Can I start with a standard of review issue? You argue that there's a patent burden when the PTO has seen the prior art. What do you mean by that and how would you define something like that? In light of I-IV-I, what we know is given that the PTO considered, in this case, all of these amnesty patents, but for the purposes of the appeal of the I-III-IV patent particularly, the Court should take that into account. As part of the summary judgment standard, I would contend that the burden is already clear in convincing evidence. There has to be no evidence from, in this case, Iowa, Pennsylvania. And the Court didn't take that into account. We don't suggest there should be some right-line higher test beyond what is the summary judgment standard of clear convincing evidence. Okay. Given, particularly in that context, what the judge did here is all the more egregious given that it was at summary judgment. This is not even just a summary judgment case. We have summary judgments where then the Court specifically says there was a battle of the experts, as in many cases, and there were disputed issues of fact such that with respect to everything but one claim, Claim 32, the Court said we can't grant summary judgment. In light of this, the Court could not grant it and then came back on reconsideration and ignored that, ignored the inferences and fact that all disputes should be taken in Osram's favor, and on reconsideration changed his mind and said, quote, there's virtual interchangeability between different topologies. Case is irrelevant. Isn't it true, though, that a genus can anticipate a species? A genus can, although Anathena tells us that it's essentially presumed that it does not. But Eli Lilly says there are times where anyone of skill in the art would look at that and immediately envisage the specific disclosure of, in this case, the 905 patent. But that, I contend, and I think the case suggests, and I don't think it's a fact question, that's a situation where if there was no evidence in the record one way or the other, we could debate, okay, who's burdened in that? But that's not this record. What we know from the record below is there was evidence, in this case, from Osram's experts that it did make a difference and that, particularly, the 334 patents wouldn't disclose to one or prior parties. When the trial court reversed its first summary judgment determination, did the trial court receive additional expert testimony? No. The record in terms of the disclosures that the expert reports was not. Did the court ever indicate what is it about the disputed facts that existed when the first determination was made, how they no longer existed when he made the second determination? Unfortunately not. And looking at, this is a case where, in this case, the judge asked AITI for findings. And AITI didn't even provide any. Query, why not? But the fact of the matter is, the court's entire decision is set forth in about a one-paragraph transcript. And in that, the court only says, I didn't see it last time at base. And the entire argument, originally, on summary judgment, was anticipation in line with the 34 of the Crime 32, and obviousness of warming. So the entire argument on summary judgment, and then the entire focus, again, on reconsideration, was one reference, the Warmbier reference. And the court didn't provide any additional guidance. All the court did was parrot the four factors of KSR and Graham, and then say, in light of that, I found shape is irrelevant. I ruled that. That's not proper. That's not what should be the standard of the 56, even if there was no dispute. In this case, where there is one, the court's obligated, under KSR and this court's treatment, to set forth, in this case, the layout. Okay, why did you come to the conclusion that this is obvious? But your expert report did say that shape topology matters. And yet, he didn't say why. There was no explanation for why it would matter. I'd suggest that, first off, could there be more in the record on both sides of this to be sure? The record we have shows there's a dispute. The court himself recognized it. In topology, I think the court missed the boat a little bit on another issue, which is, it's not just the shape of the boat we're really talking about here. It's the topology of the lamp, whereas the globular lamps have somewhat like an incandescent bulb, a ferrite core inside the lamp envelope where the buffer gas is. The lamp patented in the 905 patent is different. The core is actually outside. So it's not just, if you will, the shape of the bulb. It's something more critical than that. How does this work? And what there is in the record is, for instance, Dr. Waller, this is 8979 and 980, saying discharge plasmas, because ultimately that's how this works, are inherently unpredictable and may behave differently in different lamp topologies. So I think it's more than just a conclusory suggestion that the topology matters and the people still in the yard know that. Indeed, the 905 specification, as well, talks about this distinction when it distinguishes the QL, which is the commercially phyllis product, which is a globular bulb with an internal ferrite core, and talks about the differences there, including the one that, the more you look at this, becomes a little more obvious, which is that heat dissipation, when the ferrite core is inside the lamp envelope, is a big deal versus having the core on the outside. And so the difference in some of the objective considerations also go to that, about how this is the first commercially available lamp that had a 100,000-hour life, et cetera. Let's go back to Claim 32 for a minute. Sure. You know, this genus-species issue, I understand your point that where a genus might be extraordinarily broad and there are debates about whether it could encompass the species, you might have a different circumstance than presented here, but this is a very small genus, is it not? I disagree, and why is when we think about... Could you have a negative number? You cannot. Why? Why couldn't you have a negative number? Well, can't you have a vacuum? Which would be zero. Is that right? I believe that to be the case. Zero is a vacuum? Where this comes to a head is, this is a disputed fact question at that summary judgment, and the record on this as to testimony, for instance, where it's clear values post-trial, where we are, what we have in the record, Your Honor, I believe zero is a vacuum. And the range, to address my last question, is it's half the pressure. It's not 0.5 to 1 if we're measuring how many feet are in a mile, half a foot or a foot, okay, that's pretty close. We're talking about the difference between 1 torr and half that amount. What that means is the inventor's theory... It's between less than 1 torr. Correct. Less than... Well, let me take the two. Less than half a torr is the 9,500. The difference between that and, let's compare it to 1, and I want to address the question as to what less than 1 means. 1 torr versus 0.5. Let's look at those two data points. 0.5 means we have as much gas in this lamp envelope. The results here are that it's brighter and it lasts longer. So there's something counterintuitive about that, which goes back into some of the objective considerations, but I contend it's not a slight difference. And when we look at why that's the case and what's in the record, we have Dr. Waller saying it would be viewed as substantial, which is really the only evidence in the record. AITI's expert just says, here's what it says on the face of the 334 patent. But there's two disputes. There's a dispute as to what does the 334, one sentence of the 334 patent, what does it actually disclose? And the only thing claimed in the 334 patent is 1 torr, approximately 1 torr. There's no examples of anything less than 1 torr. There's no disclosure or no claim beyond that. And Dr. Waller, as one skill in the art, looks at 334 and says, that tells me it's roughly around 1 torr, perhaps a little bit less. Well, the claim is actually less than 1, right? The claim of the 334 patent. Even though the fact talks about everything around 1. The only claim of the 334 patent that has any buffer gas pressure is approximately 1 torr or less. Isn't that what was disclosed in Anderson 334? I think so. Anderson says approximately 1 torr or less. The single line specification in column 4 does. What I was referring to, apologies if there's any confusion, is the only thing claimed in Anderson is a dependent claim with respect to buffer gas pressure. And it says a pressure of approximately 1 torr or less. It doesn't have to be less than the dependent claim. I have a question about this same set of questions. And that is, we all understand that anticipation under our law is a question of fact, unlike obviousness. But at the same time, I'm not sure why the question of whether a genus that is broad or narrow for purposes of determining whether a particular prior art disclosure is presumed within it, I'm not sure why that's a question of fact. It seems to me that's a judgment call that the court would make. It's not a question of fact. It's a decision not unlike the ultimate decision of obviousness, which is a question of law. I think it is a question of fact, and I don't think it's a judgment call we can make on summary judgment after the fact here. Here's why. First of all, in addition to Adafino, Sanofi looks at potentially another genus species scenario and says it's a question of fact. How are we to determine that? Every patent, every technology is different, and that's why we look at it and how we have to look at the disclosure in this case of the 334 patent through the eyes of one of the skill in the art. And we have an expert on each side, and we have, at least presumed to be acting or looking at it as one of the skill in the art, the patent office. And the patent office looked at the 334 patent as well and issued this claim. And so in light of that, I come back to the question of is it substantial? Is there a difference? Well, we have testimony of the record, and the court ignored that in terms of saying it is substantial. But it's a matter of just general case law and theory on this. Every case is going to come down to not just how big a range is it. We can't just look at how wide the range is. We have to understand the art, because in some cases, as is the case here, the difference between less than 0.5 and one, or what's suggested by at least the evidence in the record that's the slowest in 95, can be substantial. But it's not for us to decide that we think the range is big or small, or 350 to 500 for some of the, for instance, Adafino, temperature range. Is that substantial? Well, it depends. It depends on the art. It depends on the patent. And in this case, it's a fact question. The patent examiner thought it was something that should issue over the 334. And the evidence in the record is disputed. And given that, the court's decision to grant a summary judgment on claim 32 was also error. I'm interested on the issue, and I think you brought this up at the very beginning of your argument, and that's the amount, the weight that the district court, or rather how it applied KSR with respect to secondary considerations of non-obviousness. What weight or what consideration did the district court give to Dr. Lawler's testimony regarding secondary considerations? I contend none. It wasn't discussed by the courts, unlike some of the other cases. But it did come up. It didn't come up at arguments. The court didn't analyze or walk through why he considered or didn't consider the objective considerations and how they're outweighed. This is a case where the invention won, other than the Nobel Prize, the highest award in plasma physics for one of the inventors because they were novel RF lamps. And there are other secondary considerations. It's really not even disputed, the success of this lamp. And those were ignored by the court. And what we know post-KSR and pre- is that you can't ignore those. They need to be considered. And indeed, they're not after the fact. It's objective, and it's part of the analysis, and the court here ignored it. OK.  continuing to ask questions. Excellent. Scott? May it please the court. My name is Glenn Trost, representing Capelli. If I could respond to a few of the points that came up during my colleague's argument. First, if I could have a few words on the topic of topology. Topology. Topology or shape. OK. There are two basic topologies at issue here. And there was a slight bit of confusion sometimes, I think, in some of the briefing, particularly below. There's a so-called globular or globular technology. And there's a tubular topology, if I could use that word, topology. And the basic difference was in a globular topology, the bulk was shaped more or less like a globe, and the ferrite material generally took the form of a probe that was inserted into the globe. In distinction, the tubular topology, all that is required by most of the claims except Claim 17, is that there be a tube that closes in on itself so that the plasma is re-entrant, so it could circulate within the tube. And then some of the claims, not all, but three of the independent claims required that there be a toroidal core placed to surround a portion of the tube. So, counsel, you're pointing out two different shapes here. One is a closed loop and the other is a globe. And explain why shape would not be relevant. The district court said shape is irrelevant. And here's where that comes in. Because there was some confusion about whether a tubular topology could also take the form externally of a globe. And the example of that that I think is the clearest is the Walker 047 patent, which in the Figure 10 embodiment has a Walker 047 patent. Was that litigated below? Yes. Yes. And I can give you a cite to where it was discussed in Mr. Lawler's report. Yes. We'll get to that one in a minute. But your reference to this topology is irrelevant. The problem is we're looking at a summary judgment record. And you didn't cite to anything other than a generalized statement from Mr. Hammer that it's irrelevant. There was no discussion. There was no formal opinion. You didn't give the lower court anything other than attorney argument, did you? Well, what we gave the lower court and what we're giving this court is we are citing to tubular topologies. And we're not relying for purposes of this appeal on any art that was limited to a globular and not a tubular topology. So all of the references that we've cited to this court that we believe sustain the judge's decision below, in other words, that the independent claims aren't valid, are all tubular and not what we call the globular shape. Now, if we look, for example... What was your evidence presented in that regard? Well, the evidence is the references themselves. They all disclose tubular topologies. Let's just talk about the references because below you specifically move for, as to Claim 32, for anticipation based on one reference. And then your reconsideration was based on that reference plus one other, right? So how is it that you cite such and you have this very detailed brief discussing many, many, many references that were never the subject of your motion? They weren't the subject of the motion below. They weren't the subject of the court's ruling. I mean, they were in your charts, but there was not an actual motion premised on any art other than the very specific ones that you cited to the court. There was an initial motion by Osram that their independent claims were not invalid. And that motion addressed all of the references except the Walker 047 that we're raising now. AITI at that point then filed a cross motion of its own for invalidity of the... Now, with respect to the first motion, that was denied. And the court said there was triable issues of fact. Well, there were two motions. There were cross motions that were decided the first time. Osram's motion that the claims were not invalid and AITI's cross motion that the independent claims were invalid. And those two motions discussed all of the references that we're talking about except Walker 047. So their motion, which gets denied, you're saying forms the basis for your appeal? Because those references were in the record, considered by the district court, and the subject of ample discussion in the record by the experts about what they mean and what implications... But the court denied it, saying that there's triable issues of fact. The court denied their cross motion. How does that support your argument that summary judgment was proper? Well, our argument is that the judgment is proper, that the claims are invalid and that a judgment of invalidity was correct. Now, we go beyond the narrow grounds that the district court relied upon for that. But everything we talk about was in the record, was the subject of a summary judgment motion directed to validity, and was the subject of the expert report. But you can see they were not the subject of your motion directed to validity. Well, the arguments that were emphasized below were as you indicated. Anticipation based on 334, and then expanding that to the other claims based on Form B and Obviousness. How do you deal with the fact that the court never addressed secondary considerations? I mean, there's plenty of case law, especially now, that says that failure to consider secondary considerations in and of itself is reversible. Well, the court did have a reference to secondary considerations as a concept to be addressed, but he did not explain what his reasoning was on that. Our position... Is that consistent with KSR? Well, we believe it is because our position is that there was no threshold showing by Osram that linked the secondary considerations to the scope of the claims that were being examined. In other words, they have... But there's no finding to that effect. There's no finding to that effect. There's pretty much no findings at all, right? The court ordered you to submit findings to FACMA conclusions of law. Why didn't you do that? That got caught up in some events. What happened was the court issued an order on the independent claims saying that they were invalid and directed AITI to prepare an order that would reflect that ruling. AITI and Osram then had another set of cross motions related to the dependent claims, and AITI submitted a paper to the court saying, before we submit our proposed findings on the independent claims, we think it would be better if the court would rule on the dependent claims because a lot of the same issues are being addressed. But then what happened is the court simply entered an order on the independent claims and dependent claims at the same time without soliciting a further input on the dependent claims. You couldn't have gone back and asked them to supplement the record with findings of FACMA conclusions of law? That could have been done, but it was not. And so how are we supposed to know what the court considered? Well, our position is that the threshold showing of a nexus between the secondary considerations and the scope of the claim was never made. And so the secondary considerations are simply legally irrelevant. And so the fact that the court didn't engage in a discussion of those facts, while not ideal, is harmless. It doesn't affect the ability of this court to fully consider and address the merits of that. What about the fact that you actually affirmatively withdrew Claim 17 from your motion for summary judgment and then the court turned around and entered judgment as it relates to Claim 17 in your favor? How can we affirm that? Well, Claim 17 was also the subject of discussion at the hearing on the motion at which time AITI told the district court that it believed that the ruling would also apply to Claim 17. So there was a paper withdrawing it, but there was oral comments at the hearing and under Rule 56, the district court is entitled to examine counsel and determine what issues were made. Did you affirmatively reinstate Claim 17? Orally, not in writing. Orally at the hearing. But at the hearing where then your opponent didn't have an opportunity to brief the issue or to address the issue because you had formally withdrawn it, right? Well, I believe that the issues had been fully briefed. The Osram position had been fully stated. In fact, I think there was even supplemental briefs filed on each of these motions by both sides. So there was extensive briefing on all of these points. And I don't think that the withdrawal of the motion as to Claim 17 and then its reinstatement pursuant to some colloquy at the hearing is prejudicial to Osram. I assume the judge understood you'd reinstated it. Is that your view? Yes. Did both sides, and am I correct that both sides asked for a jury trial? I believe that's true. So the issue before us is the simple question of whether summary judgment preempting the jury trial is proper. Correct. And your argument that there's no genuine issues of material fact that are in dispute? That's correct, Your Honor. That the references establish the invalidity of the claims. There's no dispute about claims scope or conception. There's no dispute about the level of skill in the art. There's no dispute about what the articles mean. They're all written in English. There was expert testimony. The expert testified, and we've explained in our brief why his attempts to suggest promptly... You disagreed with the expert testimony. Excuse me? You disagreed with the expert testimony. Well, I don't know that I disagreed with it. I just didn't think it rose to the level of creating a material issue. For example, on the genus versus species thing, on the 3-3-4 act, that's really where Osram's expert tried to avoid, you know, put in a statement that tried to... Well, if that's a fact issue, why wasn't that in dispute? We don't think it was a fact issue. We cited cases at pages 31 to 35 of our appellee's brief that talk about what kind of information or disclosure is inherent in a genus disclosure in the prior art and how that impacts... But in your brief, you pretty much argue that it should just be a pure legal rule that any time the genus is broad enough to cover the species, by definition, it's anticipated. Isn't that what you argue? That's a bit of an oversimplification because there are cases, for example, the Autophenia case, where the court found that while this very broad temperature range would not disclose every species within that range. But really, this case is much closer to the clear value case. But if there's any dispute over whether or not... I mean, a range of one or less could seem small in one scientific arena and be very large in another depending on what anyone of skill in the art would understand. So the only thing that's in the record is expert testimony saying that it doesn't anticipate, that it would not have been understood, that half the pressure is dramatically less. Your expert didn't say anything to the contrary. So how can we not... How can there not be an issue of fact? Well, this is just like the clear value case where the court was addressing a situation where it was 150 or less and did that anticipate as a matter of law. But that was after trial. But it's still looking at the same issue. Is there some fact that precludes a jury verdict on this issue? It's the same legal issue. Is there some fact that precludes a jury verdict? And the court there analyzed the 150 or less and said it does disclose species within the range of zero to 50 or 50 or less. And so therefore, it anticipates a claim directed to 50 or less. But that was on the circumstances of that particular fully-developed record, was it not? It was certainly a fully-developed record. But the legal issue is the same, I would submit. And that is, is there something in that fully-developed record that creates a fact issue? So what do you think is the test? Is the legal test then? Well, the legal test is it's stated in clear value. And that is that the earlier genus disclosure will invalidate a subsequent more narrow genus or species claim unless there's criticality or there's a lack of enablement. Right. Which are factual questions, right? Right. And there's no issue, there was no fact presented on either of those issues at summit judgment. In fact, the criticality, we cite the cases at pages 47 to 49 of our brief on how criticality is evaluated in these situations. But you had the burden on summary judgment. And your expert didn't say that it wasn't critical. Your expert said essentially nothing. I notice my time is up. You can answer that question. Okay. Your Honor, the expert reports that came in were, did not squarely address that issue. And it's our position that when the reference is shown, is established, then the burden shifts to the patentee to establish the criticality of their claimed range to show that the disclosure should not be invalidated. And there was no evidence of criticality. Okay. Thank you. Thank you. Do you want to address that last point, the burden shifting? I do. The suggestion that clear value somehow shifted the burden, which is essentially as these arguments, both ignores Adepina, Sanofi, but also ignores clear value. Because in clear value, as Your Honor noted, it was post-trial. But more importantly, the language in clear value is as follows. Clear value concedes that Hoffman, that was the reference, teaches every limitation of claim one to page 1344 of the decision. Quote, there is no allegation of criticality or any evidence demonstrating any difference across the range. Lastly, clear value has not argued that the 50 parts per million limitation is critical or that the claim method works differently at different points within the prior art range at 1345. So in clear value, not only was it post-trial and developed record, but the patentee themselves conceded that it was disclosed in the prior art and that across the entire range in the genus, there was no difference. That's the opposite of the record we have here, which also happens to be a summary judgment, but it's also inconsistent with the specification even of the 905 patent, which says at column six, lines four to seven, to obtain efficient production of ultraviolet radiation from mercury at high current, it is important that the buffer gas pressure be less than .5 torr. So this is a quintessential fact question, but it's borne out in the specification as well as the dispute amongst the experts. The AITI's suggestion that all of this other art is somehow fair game, it was not argued below. The record is clear as to what was at issue on their summary judgment motion, and specifically at age 1715 through 19, that's the summary judgment brief where only Anderson 334 was argued for claim 32 and only Warmbie was argued. What about the argument that you put it all in front of the trial judge for consideration? The court denied that motion and the response ironically from AITI wasn't that all of those others also rendered it invalid, it's just that those were disputed issues of fact. They focused on the same references in their own motion and the premise that losing our summary judgment motion then becomes their record below, there's no support for your honor. Specifically with respect to obviousness, they cannot go out and pick a tubular or a globular reference for two amps and stick it into a tubular claim. All of the claims of the 905 patent require a closed loop tubular system and a ferrite around it. That is a different thing, and the court wouldn't have had to decide. Shape is irrelevant if the topology itself wasn't the difference between the prior art he was applying and the 905 patent. They were taking globular disclosures from Warmbier and putting them into a tubular claim, and for that reason the court had to first get over the threshold of topology and whether it mattered or not, and on that score it's not just the experts, but the inventor himself testified that it can make and does a very big difference. Thank you.